EXXON CORPORATION, et al., Petitioners,

v.

ATLANTIC RICHFIELD COMPANY, Respondent.

No. C–2792.

Supreme Court of Texas.

Oct. 31, 1984.

Vickrey & Doggett, Jack Vickrey and Cary V. Sorensen, Houston, for petitioners.

Kirklin, Boudreaux & Joseph, Stephen R. Kirklin and Tim S. Leonard, Houston, for respondent.

WALLACE, Justice.

This is a suit arising out of three contracts. Atlantic Richfield Company (Arco) was plaintiff below. Exxon Corporation, Marathon Oil Company, Mobil Producing Texas & New Mexico, Inc., Sun Gas Company, Tenneco Oil Company, Gulf Oil Corporation, Amoco Production Company, and Paul F. Barnhart, (Exxon) were defendants. The trial court severed out one of the causes of action pleaded by Arco and granted a summary judgment for Exxon on the remainder of the case. The court of appeals reversed the judgment of the trial court and remanded the case for trial. 663 S.W.2d 858. We reverse the judgment of the court of appeals and render judgment for Exxon.

Prior to March 11, 1949, the date of the contracts, the parties to this suit individually owned the working interests under various oil, gas and mineral leases located in the Heyser Field in Calhoun and Victoria Counties. For production, marketing and conservation purposes, the parties entered into these contracts. The stated purpose of the contracts was to provide an equitable and reasonable allocation of gas, plant ownership and use. Ownership of the plant, facilities, equipment, lines and processed gas was apportioned based on an agreed estimate of each party's proportionate ownership of the total known reserve in the Heyser Field, rather than on the basis of actual production. This agreement closely followed an order of the Railroad Commission which prohibited the flaring of casinghead gas.

The first contract was a formal cross-conveyance of undivided interests in the existing gasoline plant. The second contract provided for enlargement and joint operation of the plant for the utilization of each party's gas and for pressure maintenance so as to increase oil production. The products from the casinghead gas processed in the plant were owned in proportionate share as set out above. The term of the contract was ten years and was to continue until terminated by a vote of two-thirds of the owners of the plant either before or after the ten-year period.

The third contract provided for the construction and operation of pipelines and facilities to handle non-associated gas, also known as gas-well gas. Ownership of these facilities was proportionate to the ownership and reserves of non-associated

gas. However, unlike the plant contract, this contract contained no sharing agreement and each party received only its own production of non-associated gas. This gas did not go through the plant covered by the first contract. The term of the contract was also for a period of ten years and was to continue until terminated by a vote of the owners of the facilities either before or after the ten year period.

Both the second, or plant contract, and the third, or facilities contract, provided that should any party own two-thirds interest the contract could not be terminated without the vote of one other party. Likewise, should any party own one-third interest, a vote to terminate could not be vetoed by that party without the joinder of one other party. In other words, a single party could not terminate the contract, nor could a single party prevent termination.

These contracts continued in effect from 1949 until 1980, when all parties except Arco voted to terminate them. Arco owned 13.4316% of the associated gas reserves and 9.7638% of the non-associated gas reserves. Over the 30-plus years of operation Arco had produced a greater amount of associated gas than its proportionate share of the reserves, but received only its 13.4316% of the by-products of the plant.

Arco objected to the termination and filed suit against the other parties alleging that the contract effected a cross-conveyance of the working interest of the parties in the Heyser Field.

The trial court granted Exxon's Motion for Summary Judgment based upon the following findings:

1. The Assignment, Plant Contract and Facilities Contract, all dated March 11, 1949, are not ambiguous.

2. Said documents were not intended to and did not constitute cross-conveyances of gas reserves in the Heyser Field, Calhoun and Victoria Counties, Texas.

3. The Plant Contract and Facilities Contract were duly terminated pursuant to their own terms as of Octo-

ber 1, 1980, with Arco participating in the vote on said termination.

4. Arco retains no rights or obligations under the 1949 Plant Contract, or Facilities Contract after the termination thereof.

The court of appeals agreed that there was no cross-conveyance of the working interest, but held that the three contracts, when construed together, contained an implied covenant that there could be no termination during the life of the Heyser Field. The pivotal issue is whether the contract contained an implied covenant of non-termination.

The termination provisions in both the plant contract and the facilities contract are as follows:

Term. Unless sooner terminated by a vote of the Plant Owners who own at the time the vote is taken a sixty-six and two-thirds (66⅔) percent or more interest in the Plant, this contract shall be for a term of ten years from the date hereof and shall continue in force and effect thereafter until terminated by such vote of the then Plant owners. Should one party hereto hold as much as sixty-six and two-thirds (66⅔) percent interest in the Plant, the favorable vote of at least one other party shall be required for any such termination. Should one party hereto hold as much as a thirty-three and one-third (33⅓) percent undivided interest in the plant, the vote of at least one other party shall be required to defeat the vote to terminate this contract by all of the remaining parties.

The contracts thus contain a specific provision for termination by a two-thirds vote of the parties either before or after the ten year term. Termination could not be effected by a single interest holder. In addition, termination could be vetoed by a one-third vote of the interest holders; however, termination could not be vetoed by a single interest holder.

The termination action was approved by 86.5684% of the voting interest representing all parties except Arco. The only vote

not to terminate was by Arco, which represented 13.4316% of the voting interest.

 There can be no implied covenant as to a matter specifically covered by the written terms of the contract. *Freeport Sulphur Co. v. American Sulphur Royalty Co.*, 117 Tex. 439, 6 S.W.2d 1039, 1042 (1928). The agreement made by the parties and embodied in the contract itself cannot be varied by an implied good-faith-and-fair-dealing covenant. *See English v. Fischer*, 660 S.W.2d 521 (Tex.1983).

 All parties agreed upon the termination clause. These clauses expressly and unambiguously set out the terms under which the contract could be terminated. There can be no implied covenant to the contrary.

The court of appeals correctly disposed of the other points of appeal in this cause.

The court of appeals judgment of remand is reversed and the trial court's judgment denying all relief to Arco is affirmed.

McGEE, J., not sitting.