J. Hamilton COLEMAN, Dean A. Flowers, John D. Ward and Curtis Whitehead, Appellants,

v.

ROTANA, INC. (N.V.) and Rotana Ltd.

No. 05–88–01307–CV.

Court of Appeals of Texas, Dallas.

Aug. 8, 1989.

Rehearing Denied Oct. 2, 1989.

Mark S. Werbner, Karen L. Hirschman, Lyndon F. Bittle, Dallas, for appellants.

David C. Kent, Bobby M. Rubarts, Dallas, for appellees.

Before STEWART, THOMAS and WHITTINGTON, JJ.

STEWART, Justice.

J. Hamilton Coleman, Dean A. Flowers, John D. Ward, and Curtis A. Whitehead appeal from a judgment entered in favor of Rotana, Inc., (N.V.) and Rotana Ltd. (Rotana) in Rotana's suit for rent and attorney's fees. Rotana sued the four appellants individually on their personal guaranties of the payment and performance of the obligations and liabilities of the tenant under a commercial lease. Appellants defended Rotana's suit for rent, claiming fraudulent inducement, breach of the implied warranty of suitability and breach of the covenant of quiet enjoyment, and they also asserted counterclaims based upon these same theories, all arising from the landlord's failure to provide adequate parking to the tenant for its restaurant. The trial court refused to submit appellants' requested issues on all but the fraud claim, which the jury answered in favor of the landlord. In six points of error, appellants contend that the court erred in refusing to submit four of their requested issues and in overruling their objections to the submission of an

issue regarding Rotana's attorney's fees. We affirm.

A commercial lease was executed on or about July 26, 1985, between appellants (tenant) and Rotana (landlord), covering 2275 square feet in a 3500 square foot strip center located on Greenville Avenue in Dallas. The lease required appellants to operate as a "first class restaurant and bar." They operated under the trade name of Catalina Cafe. The other occupants of the strip center (also tenants of Rotana) were "Wok–n–Roll" and "Windsor's Pizzeria." At the time the lease was signed, the parking lot in the strip center had twenty-nine parking spaces. The lease provided that the costs of operating and maintaining the common areas (including the parking lot) were to be shared by all tenants of the strip center.

The City of Dallas parking laws require a certain number of parking spaces be available for a particular business space, based on the use of that space (i.e., office, retail, restaurant) and its square footage. For example, a sit-down restaurant requires one parking space for each one hundred square feet, a take-out restaurant requires one parking space for each 200 square feet, and a drive-in restaurant requires one parking space for each fifty square feet. Appellants were aware that they needed access to twenty-three parking spaces to meet the code and that citations would be issued by the city if the restaurants did not meet the code.

Coleman testified that, before the lease was signed, Rotana's agent had represented to appellants that Catalina Cafe would be the only sit-down restaurant in the center. The evidence showed that Rotana's leases with both Wok–n–Roll and Windsor's Pizzeria only permitted those establishments to operate as take-out restaurants. However, Wok–n–Roll had previously represented to the city that it planned to operate a drive-in restaurant, requiring twice as many parking spaces per square 100 feet as a sit-down restaurant. Coleman also testified that, before the lease was signed, Rotana's agent represented to him that Catalina Cafe was to have twenty-three of the twenty-nine parking spaces available for its exclusive use. Coleman inspected the shopping center and parking lot before executing the lease. At that time, Wok–n–Roll had opened, but Windsor's Pizzeria had not.

The same day that the lease was signed, appellants assigned all of their right, title, and interest as tenant in and to the lease to Catalina Cafe, Inc. The assignment also provided that appellants would continue to be liable to Rotana, the landlord, for payment and performance of all obligations of tenant under the lease and they unconditionally guaranteed such payment and performance. After the lease was signed and appellants had started renovating the space in preparation for the opening, it was discovered that Wok–n–Roll was operating in violation of its lease as a combination drive-in/sit-down restaurant. There was insufficient parking at the center to permit Wok–n–Roll to operate as a "drive-in restaurant" under the Development Code.

After Catalina Cafe opened, Windsor's Pizzeria opened, and it also operated as a sit-down restaurant, in violation of its lease. Wok–n–Roll and Windsor's Pizzeria were entitled to six parking spaces between them pursuant to the uses set out in their leases and their square footage. However, because they were both operating as sit-down restaurants, Coleman testified that the patrons of those establishments occupied more than the six spaces available to them.

From the first Friday night it was open to the public, Catalina Cafe experienced parking problems. The parking lot was full, but many of the occupants of the cars were patrons of establishments outside the strip center. Appellants then painted "Catalina Cafe only" on twenty-three of the parking spaces in the strip center. Rotana required these markings to be removed, but did permit Wok–n–Roll and Windsor's to mark their spaces "15 minutes only," precluding Catalina Cafe's customers from using those spaces.

Appellants hired a valet service, but Coleman testified that this did not solve the parking problem. Coleman testified that

Thursday through Sunday nights, Catalina Cafe never had more than fifty percent of the twenty-nine spaces at the center available to its customers. The city inspected Rotana's strip center in March 1986, and both Wok-n-Roll and Windsor's received written warnings from the city to correct parking code violations. Catalina Cafe received an oral warning for a parking code violation at the same time.

Catalina Cafe, Inc. operated Catalina Cafe from September 1985 until August 1986, when it closed its doors. Upon closing, appellants requested that Rotana give Catalina Cafe, Inc. rent relief and that it allow them to remodel the space and reopen as a Mexican food restaurant. Rotana complied with these requests. During the remodeling phase, Coleman, Flowers, Ward, and Whitehead sold all of their stock and ownership in Catalina Cafe, Inc. to Robert Miller and Thomas Fleeger.

In or around November 1986, Catalina Cafe, Inc., now owned by Miller and Fleeger, reopened and operated a Mexican food restaurant until April 1987. After this restaurant closed, appellants requested Rotana's permission to sublease the space to other investors. A sublease was drawn up by Rotana, appellants made a counter-proposal, Rotana rejected it, and this lawsuit was filed on June 9, 1987.

Appellants' points of error one, two, three, and six complain of the trial court's refusal to submit certain requested issues. In order to prevail on a point of error based on a failure of the court to submit an issue, the appellant must show, 1) that the issue was properly tendered to the court in substantially correct wording; 2) that the trial court refused to submit the issue to the jury; 3) that the issue was raised by the written pleadings; and 4) that there was some evidence in the record to support a jury finding on the issue. TEX.R.CIV.P. 276 and 278; *Southwestern Bell Tel. Co. v. Thomas*, 554 S.W.2d 672, 674 (Tex.1977).

In their first point of error, appellants contend that the trial court erred in refusing to submit their requested issue inquiring as to whether Rotana breached the implied warranty of suitability. They rely on the supreme court's recognition of a commercial landlord's implied warranty of suitability in *Davidow v. Inwood North Professional Group,* 747 S.W.2d 373 (Tex. 1988):

> There is an implied warranty of suitability by the landlord in a commercial lease that the premises are suitable for their intended commercial purpose. This warranty means that at the inception of the lease there are no latent defects in the facilities that are vital to the use of the premises for their intended commercial purpose and that these essential facilities will remain in a suitable condition.

*Id.* at 377.

Appellants maintain that the question before this Court is whether the warranty of suitability encompasses the availability of sufficient, suitable parking facilities for use by their customers, and that the test to be applied in making this determination is whether parking was among the "facilities that are vital to the use of the premises for their intended commercial purpose." *Id.* They argue that, because the intended use of the premises, and the use required by the lease, was the operation of a "first class restaurant and bar," adequate parking was essential and, therefore, a vital facility under their lease. They point to their evidence that parking for the Catalina Cafe was insufficient because of their co-tenants' uses of their premises as sit-down/drive-in restaurants, in violation of their respective leases, that consequently the parking available to the three tenants violated the city parking requirements, and that the landlord took no action to enforce Wok-n-Roll's and Windsor's lease restrictions. They conclude that because whether there has been a breach of the warranty is generally a fact question, *id.*, and because they presented a proper issue for submission to the jury along with some evidence to support the finding of a breach, the trial court committed reversible error in refusing to submit this issue to the jury.

Rotana replies that the Supreme Court's rationale for extending the implied warranty of suitability to a commercial tenant, as well as the court's explanation of the war-

ranty, as quoted above, demonstrates that the warranty is limited to latent defects within the leased structure itself:

It cannot be assumed that a commercial tenant is more knowledgeable about the quality of a structure than a residential tenant. A businessman cannot be expected to possess the expertise necessary to adequately inspect and repair the premises, and many commercial tenants lack the financial resources to hire inspectors and repairmen to assure the suitability of the premises.

*Id.* at 376.

Based on the two quotations above, Rotana contends that the defects to which the warranty applies are physical problems or malfunctions that require repair. It argues that even if the warranty does extend to the parking lot, it applies only to a physical defect in it or in its construction and that illegal or unauthorized use of the common parking lot by cotenants is not the type of "defect" to which the warranty applies.

■ We agree that inadequate parking caused by cotenants' use of their premises in a manner not permitted under their respective leases is not the type of defect that the implied warranty of suitability encompasses. We conclude that this warranty only covers latent defects in the nature of a physical or structural defect which the landlord has the duty to repair. We hold that appellants' complaint does not fall within the scope of the implied warranty of suitability; consequently, they presented no evidence of a breach of this warranty.

■ We also conclude that not only must the defect alleged be within the scope of the warranty, the "facility" alleged to be defective must be within the leased premises. We base this conclusion on the supreme court's language in *Davidow* where the court stated that a commercial landlord is to "lease premises suitable for their intended commercial use" and that he "impliedly represents that the premises are ... suitable for that use and will remain in a suitable condition." *Id.* at 377.

■ In the lease at issue, the "demised premises" that are the subject of the lease are defined as "approximately 2,275 square feet in Building—(computed from measurements to the exterior of outside walls of the building and to the center of interior walls)...." The common area of the shopping center is defined in the lease as "the part of the Shopping Center designated by landlord from time to time for the common use of all tenants, including ... parking area...." The lease further provides that the tenant has the nonexclusive right to use the common area and that such use is in common with other tenants. Under the terms of this lease, the parking lot is not part of the "demised premises," but is part of the "common area" which appellants had the nonexclusive right to use. Thus, the warranty of suitability does not apply to the parking facilities under the terms of this lease. Express provisions of the lease control the applicability of the warranty. *Id.*

We do not hold that the implied warranty of suitability could never encompass adequate parking facilities. However, the acts and omissions of the landlord and the other tenants at the center, which allegedly resulted in the inadequacy of parking to serve the needs of a first-class restaurant of the size contemplated in appellants' lease, involved *use* of the parking area. Appellants specifically contracted for the *nonexclusive use* of that area. There can be no implied warranty as to a matter specifically covered by the written terms of the lease. *Exxon Corp. v. Atlantic Richfield Co.,* 678 S.W.2d 944, 947 (Tex.1984). Appellants' first point is overruled.

In their second point, appellants contend that the court erred in refusing to submit their requested issue inquiring as to whether the landlord breached the covenant of quiet enjoyment, because sufficient evidence was introduced to require the issue to be submitted. It is Rotana's position, however, that there was no evidence presented regarding the necessary element of abandonment of the premises by appellants within a reasonable time. Rotana contends that the evidence shows that, as a matter of law, the premises were never

abandoned prior to the filing of this suit or, in the alternative, abandonment eight months after the problem surfaced was not a reasonable time.

■■■ A breach of the covenant of quiet enjoyment involves the *following elements:* 1) an intention of the landlord that the tenant no longer enjoy the premises; 2) a material act by the landlord that substantially interferes with the intended use and enjoyment of the premises; 3) the act permanently deprives the tenant of the use and enjoyment of the premises; and 4) the tenant abandons the premises within a reasonable time after the commission of the act. *Metroplex Glass Center, Inc. v. Vantage Properties, Inc.,* 646 S.W.2d 263, 265 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). The landlord's intent may be inferred from the circumstances. There is no specific time period that constitutes a "reasonable time" as a matter of law. Whether the abandonment was within a reasonable time is ordinarily a question of fact. *Downtown Realty v. 509 Tremont Bldg.,* 748 S.W.2d 309, 311 (Tex.App.—Houston [14th Dist.] 1988, no writ).

■■ We agree that appellants offered some evidence on the first three elements stated above. However, the question to be decided is whether there was evidence that the tenant abandoned the premises, and, if so, whether there is a fact question as to whether the abandonment was within a reasonable time *after the material act was committed.*

Appellants contend that the premises were abandoned when Catalina Cafe closed and vacated the premises at the end of August 1986. On the other hand, Rotana contends that Catalina Cafe was not the tenant, that Catalina Cafe, Inc. was the tenant under appellants' assignment of their rights under the lease, and that the corporation never abandoned the premises. In the alternative, they argue that the abandonment, if any, was not as a matter of law within a reasonable time.

The record reflects that after Catalina Cafe closed, appellants requested and received the right to reopen as a Mexican food restaurant, although it would not be a "first-class" restaurant. During the remodeling phase, appellants sold their stock in the corporation to Miller and Fleeger; the corporation, through the new owners, then opened and operated the Mexican food restaurant under the name of the Hard Luck Cafe until April 1987. At that time, appellants immediately entered negotiations to sublease the space to other investors. These negotiations continued as late as June 1987. The premises were then vacant until Rotana released the premises to L.V.D., Inc. in December 1987, and it occupied the space until a month or two before the trial in June 1988.

Based on these facts, we conclude that Catalina Cafe, Inc., the tenant, vacated the premises at the earliest in April 1987. Further, appellants cannot claim abandonment of the premises until their efforts to sublease the space to other investors failed in June 1987.

■ The "material act" by the landlord about which appellants complain is that Rotana provided inadequate parking for Catalina Cafe. Coleman testified that this parking problem surfaced the first Friday night that Catalina Cafe was open for business in September 1985. Even using the earlier date of April 1987 for the abandonment, we hold that this twenty-month delay is not within a reasonable time as a matter of law. *Metroplex Glass,* 646 S.W.2d at 265–66 (holding that seventeen-month delay in abandoning premises is not within a reasonable time as a matter of law).

■ In addition, it was appellants' burden to offer evidence that the premises were abandoned *because of* inadequate parking, the intentional act of the landlord upon which they rely. *Tempo Tamers, Inc. v. Crow–Houston Four, Ltd.,* 715 S.W.2d 658, 663 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). Appellants have produced no evidence that Catalina Cafe, Inc. abandoned the premises in April 1987 because of inadequate parking. The record is silent as to the reason for the Hard Luck Cafe's closing at that time. For this additional reason, we hold, as a matter of law, no constructive eviction existed.

The trial court did not err in refusing to submit appellants' tendered issue on breach of the covenant of quiet enjoyment because they failed, as a matter of law, to prove the fourth element of that cause of action. Appellants' second point is overruled.

Having held that appellants were not entitled to the submission of their requested issues on their claims for breach of the implied warranty of suitability and for breach of the covenant of quiet enjoyment, we do not reach their third point, complaining of the trial court's refusal to submit their requested damage issue in relation to these issues.

■ In their sixth point, appellants contend that the court erred in refusing to submit their issue concerning their claim for negligent misrepresentation. Rotana contends that this claim is barred by the two-year statute of limitations. *Cook Consultants, Inc. v. Larson,* 677 S.W.2d 718, 721 (Tex.App.—Dallas 1984), *rev'd on other grounds,* 690 S.W.2d 567 (Tex.1985). We agree. Appellants based this cause of action on their claim that the landlord negligently misrepresented the nature of the parking available at the shopping center. The record conclusively established that appellants had knowledge of the alleged falsity of the statements included within their tendered issue at the latest in September 1985. They did not file their counterclaim for negligent misrepresentation until December 9, 1987. As a matter of law, this claim was barred by the two-year statute of limitations. Appellants' sixth point is overruled.

In point four, appellants argue that the court erred in overruling their objection to the submission to the jury of Question Number 2 pertaining to the landlord's attorney fees because there was no evidence to support its submission.

In reviewing a no evidence point, we must only consider the evidence and reasonable inferences drawn therefrom, which, when viewed in their most favorable light, support the jury's verdict. We must also disregard all evidence and inferences to the contrary of the fact finding. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.

1987). A no evidence point of error may be sustained if the record discloses that the trial court was barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact. *Jacobini v. Hall,* 719 S.W.2d 396, 399 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.). If there is any probative evidence at all, a no evidence point cannot be sustained. *Lucas v. Texas Indus., Inc.,* 696 S.W.2d 372, 374 (Tex.1984).

■ Appellants contend that the special issue on attorney fees should not have been submitted because Rotana did not segregate the attorney fees incurred in defending appellants' counterclaim from those incurred in pursuing its rent claim against them. They maintain that fees incurred in the defense of a counterclaim are not recoverable by statute unless the facts necessary for the plaintiff to recover on its claim also serve to defeat the counterclaim. TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1989); *Crow v. Central Soya Co.,* 651 S.W.2d 392, 396 (Tex.App.— Fort Worth 1983, writ ref'd n.r.e.); *Bray v. Curtis,* 544 S.W.2d 816, 819 (Tex.Civ.App. —Corpus Christi 1976, writ ref'd n.r.e.). They argue that Rotana's evidence on its breach of lease claim for rent contributed nothing to the defense of their counterclaim, and, therefore, absent segregation, Rotana presented no legally cognizable evidence of its attorney fees.

■ We agree with the proposition of law relied on by appellants. However, we think, as applied to our facts, that proposition calls for a different result from that reached by the courts under the facts of the cited cases. In *Crow,* Central Soya sued Crow on a sworn account for amounts due on the sale of fish feed by Soya to Crow. Crow counterclaimed under the Deceptive Trade Practices Act. In *Bray,* Curtis sued Bray under the Deceptive Trade Practices Act and for conversion of his pickup; Bray, who operated a wrecker service, counterclaimed for towing and storage charges on the pickup and for foreclosure of a lien on the pickup for such charges. In both cases, the denial of attorney fees was affirmed. However, in each

of these cases, plaintiff's claims could not be defeated even if the counterclaimant had prevailed on his claims. If both parties had prevailed, the respective recoveries would have involved an offset.

Our facts are distinguishable. Appellants' counterclaims were based on the same facts and circumstances as their affirmative defenses, which, if proven, would have resulted in a denial of Rotana's claim for rent. Under these facts, to recover on its claim, Rotana was required to defeat appellants' counterclaims. *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 625 (Tex.App.—Dallas 1987, writ denied). A party may recover attorney fees rendered in connection with all claims if they arise out of the same transaction and are "so interrelated that their prosecution or defense entails proof or denial of essentially the same facts." *Id.* at 624–25.

In this case, Rotana's claim for rent and appellants' counterclaim arose out of the same transaction. Because Rotana had to defeat the counterclaims in order to prevail, the rental claim and the counterclaims were so interrelated that they involved proof or denial of essentially the same facts. *Id.* Further, Rotana's attorney testified that the rental claim and the affirmative defenses/counterclaims were inextricably intertwined and segregation of the fees was impossible. Appellants offered no controverting testimony on this issue. Under these facts, Rotana was not required to segregate its fees. *Id.*

■ Accordingly, we conclude that there was some evidence to support the trial court's submission of Question Number 2, which allowed the jury to consider fees incurred by Rotana on the whole case. *Williamson v. Tucker*, 615 S.W.2d 881, 892 (Tex.App.—Dallas 1981, writ ref'd n.r.e.). Appellants' fourth point is overruled.

In their fifth point, appellants contend that there was insufficient evidence to support the submission of the attorney fee issue. They rely on the reasons stated in their fourth point. We agree with Rotana that this point has no merit because a trial court may not refuse to submit an issue to the jury if there is some evidence to support it, even if the evidence is factually insufficient to support an affirmative finding on that issue. *Wenzel v. Rollins Motor Co.*, 598 S.W.2d 895, 902 (Tex.Civ.App. —El Paso 1980, writ ref'd n.r.e.). We have held that there was some evidence to support submission of the attorney fee issue. Appellants' fifth point is overruled.

The trial court's judgment is affirmed.