TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00204-CV







Travis Woods II, Ltd., Appellant



v.



Mortgage Makers, Inc., Appellee







FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY


NO. 236,307, HONORABLE ORLINDA L. NARANJO, JUDGE PRESIDING








 Travis Woods II, Ltd. appeals a take-nothing judgment in favor of Mortgage
Makers, Inc. We will affirm.


THE DISPUTE


 Mortgage Makers, Inc. leased commercial office space from Travis Woods II, Ltd.,
beginning in June 1994. Mortgage Makers vacated the space in April 1997, with approximately
two and one-half months remaining on the term of the lease, because of problems with the roof
which allowed water to leak into their space when it rained. According to Mortgage Makers'
president, Richard Schwarz, the leaks began with the first rain after Mortgage Makers began
leasing the space and continued throughout the time of its occupancy. Water leaked through the
ceiling and ran down the walls, which caused damage to carpeting, ceilings, walls and some of
Mortgage Makers' equipment. With each rain and the resulting leakage, Mortgage Makers
notified Kucera Management Company, the property manager. Travis Woods did not dispute that
the roof leaked, but rather argued that there were no implied warranties in the lease. Further, it
contended that the lease did not obligate them to repair the roof, rather only to diligently and in
good faith attempt to repair the roof. Travis Woods argued that nothing excused Mortgage
Makers' obligation to pay rent. 

 Travis Woods sued Mortgage Makers for the unpaid rent, late charges, pass-through expenses, pre- and post-judgment interest, costs and attorney's fees. After a bench trial,
the court signed a take-nothing judgment in favor of Mortgage Makers. In support of its
judgment, the trial court found: 1) the defect was not the result of any fault of Mortgage Makers;
2) the water leaks interrupted and interfered with Mortgage Makers' peaceful use and enjoyment
of the premises; 3) the problem was never completely corrected during Mortgage Makers' lease;
and 4) that Mortgage Makers was unable to use the space for the intended purposes due to acts and
omissions of Travis Woods which rendered the premises unsuitable for their intended use. (1) The
trial court concluded that Travis Woods breached the implied warranty of suitability and signed
a take-nothing judgment in favor of Mortgage Makers from which Travis Woods appeals.


DISCUSSION


 Both parties argue that this case is determined by the application of the implied
warranty of suitability in a commercial lease. (2) The implied warranty provides that the landlord
in a commercial lease warrants that the premises are suitable for their intended commercial
purpose. Davidow v. Inwood N. Professional Group-Phase I, 747 S.W.2d 373, 377 (Tex. 1988). 
This implied warranty means that at the inception of the lease there are no latent defects in the
facilities that are vital to the use of the premises for their intended commercial purposes and these
essential facilities will remain in a suitable condition. Id. Because we conclude that the express
terms of the lease determine the obligation to repair the roof, we do not reach the issue of the
implied warranty or whether it was waived.

 Because neither party contends the lease is ambiguous, its interpretation is a
question of law to be decided by the court. See Coker v. Coker, 650 S.W.2d 391, 393 (Tex.
1983); MJR Corp. v. B & B Vending Co., 760 S.W.2d 4, 10 (Tex. App.--Dallas 1988, writ
denied); Myers v. Ginsberg, 735 S.W.2d 600, 602 (Tex. App.--Dallas 1987, no writ). A lease
will be given a reasonable construction that will carry out the parties' intentions, and in case of
any doubt as to their intentions, the lease will be construed most strongly against the lessor. 
Myers, 735 S.W.2d at 603. Construction of a lease that is unreasonable or unequal should be
avoided, and that construction which is obviously the most just will be favored. Id. When
construing a particular paragraph in a lease, the entire lease must be considered. Id. 

 The lease provides that Travis Woods "shall repair and/or replace, as needed, the
following items as a building expense under paragraph 32.1, . . ." (3) Paragraph 32.1 requires
Mortgage Makers to pay, in addition to rent, its pro rata share of the "building operating
expenses" contained in Exhibit C to the lease. (4) The lease defined "building operating expense"
as including "roof repairs . . . and other maintenance expenses." Because Travis Woods charged
Mortgage Makers a monthly fee which has been specifically set aside to pay for such expenses as
roof repairs, and because the lease does not obligate Mortgage Makers to perform roof repairs, (5)
we conclude that the phrase, "lessor shall repair and/or replace . . . as a building expense under
32.1," obligates Travis Woods to maintain the items defined as "business operating expenses."
Moreover, if the "repair and replace" language in paragraph 8.1 refers only to those items listed
in paragraph 8.1, the items listed in Exhibit C would not be the obligation of either lessee or
lessor. Such interpretation is not reasonable since many of the "building operating expense" items
are fundamental to the operation of a building, which would be the responsibility of the owner
unless expressly made the obligation of the tenants. The lease in this case does not charge the
tenants with the responsibility for the building's operation.

 Having determined that the express terms of the lease obligate Travis Woods to
repair the roof, we must now determine whether the failure to adequately repair the roof excuses
Mortgage Makers' obligation to pay rent, thereby terminating the lease. As provided in paragraph
18.1, (6)
 a default by lessor for more than seven days after lessee's written demand allows lessor to
terminate the lease. According to the evidence, the roof leaked and water entered Mortgage
Makers' space each time it rained from the inception of the lease in June 1994 until it vacated in
April 1997. Mortgage Makers' president testified that water ran down the walls, saturated the
carpet, and that a portion of the ceiling, damaged by the water leaks, fell in the lap of a Mortgage
Makers client. In addition, Mortgage Makers' employees had to vacate portions of the office when
it rained because the water prevented use of parts of the office. Mortgage Makers called Travis
Woods "every time" there was a problem, and gave written notice on August 29, 1996. Travis
Woods contended that it attempted to repair the roof after receiving complaints from Mortgage
Makers; however, despite Travis Woods' alleged efforts, Mortgage Makers continued to have
leakage problems. Because the roof leaked for almost three years, causing damage and
interruption of Mortgage Makers' use of the space, we conclude that Travis Woods did not satisfy
its obligation to diligently proceed in good faith to cure the problem. Accordingly, pursuant to
paragraph 18.1 of the lease, Mortgage Makers was entitled to terminate the lease. We overrule
Travis Woods' issue. 


CONCLUSION


 Having overruled Travis Woods' issue, we affirm the trial-court judgment.



 

 Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices Jones and Yeakel

Affirmed

Filed: August 12, 1999

Do Not Publish
1. Travis Woods did not challenge the trial court's findings of fact. Generally, unchallenged
findings of fact are binding on appeal. See Burrows v. Miller, 797 S.W.2d 358, 360 (Tex.
App.--Tyler 1990, no writ). When accompanied by a statement of facts, findings of fact will be
sustained on appeal if any evidence supports them. Id. at 361; 4 Texas Civil Practice § 20.14, at 
27 (Diane M. Allen et al. eds., 1992 ed.). 
2. The lease provides that "[l]essor's duties and warranties are limited to those expressly stated
in this lease and shall not include any implied duties and warranties, now or in the future. No
representations or warranties have been made by Lessor other than those expressly contained in
this lease." Travis Woods argues that this provision expressly waives all warranties not expressed
in the lease; Mortgage Makers argues that the implied warranty is not waived. We note that there
can be no implied warranty concerning a matter specifically covered by the written terms of the
lease. Coleman v. Rotana, Inc., 778 S.W.2d 867, 871 (Tex. App.--Dallas 1989, writ denied)
(citing Exxon Corp. v. Atlantic Richfield Co., 678 S.W.2d 944, 947 (Tex. 1984)). 
3. The entire provision reads: 


8.1 Maintenance and Repairs by Lessor Lessor shall repair and/or replace, as needed, the
following items as a building expense under paragraph 32.1, so long as they are building standard
items: light bulbs, ballasts, and fixtures; plumbing; hardware; appliances; doors; and wall and
window coverings. Lessor shall use diligence to provide for the reasonable cleaning, maintenance,
repair, reconnection of interrupted utilities or services, and landscaping of common areas, subject
to any reimbursement obligations of Lessee under paragraph 8.2. . . . 
4. 32.1 Building Operating Expense In addition to the monthly base rent in paragraph 2.1,
Lessee shall pay additional rent on a monthly basis, equivalent to Lessee's prorata share of actual
building operating expenses as per Exhibit C. . . . 


Exhibit C provides: Exhibit C - Building Operating Expense Passthrough Calculations - (c)
DEFINITION OF BUILDING OPERATING EXPENSES. Building operating expenses for each
calendar year shall include: . . . roof repairs, . . . and other maintenance expenses; . . . .
5. 8.2 Maintenance and Repairs by Lessee Lessee shall promptly reimburse Lessor for the
cost of repairing or replacing non-building standard items and the cost of repairing or replacing
damage which is cased inside Lessee's office space by Lessee, Lessee's agents, employees, family,
or licensees, invitees, visitors, or customers or outside Lessee's office space by lessee or Lessee's
employee's [sic], agents or contractors. . . .Lessee shall pay for replacement of all non-building
standard light bulbs and for unstopping any drains or water closets in Lessee's office space. . . .
6. 18.1 Default by Lessor Lessee shall be entitled to recover actual damages and terminate
this lease if (1) Lessor fails to pay any sum due and owing to Lessee within 7 days after written
demand from Lessee, or (2) Lessor remains in default on any other obligation for 7 days after
Lessee's written demand for performance. However, Lessor shall not be in default if Lessor
promptly commences to cure such noncompliance and diligently proceeds in good faith to cure
same after receiving written notice of such default. . . .




WP="BR2">

 

 Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices Jones and Yeakel

Affirmed

Filed: August 12, 1999

Do Not Publish
1. Travis Woods did not challenge the trial court's findings of fact. Generally, unchallenged
findings of fact are binding on appeal. See Burrows v. Miller, 797 S.W.2d 358, 360 (Tex.
App.--Tyler 1990, no writ). When accompanied by a statement of facts, findings of fact will be
sustained on appeal if any evidence supports them. Id. at 361; 4 Texas Civil Practice § 20.14, at 
27 (Diane M. Allen et al. eds., 1992 ed.). 
2. The lease provides that "[l]essor's duties and warranties are limited to those expressly stated
in this lease and shall not include any implied duties and warranties, now or in the future. No
representations or warranties have been made by Lessor other than those expressly contained in
this lease." Travis Woods argues that this provision expressly waives all warranties not expressed
in the lease; Mortgage Makers argues that the implied warranty is not waived. We note that there
can be no implied warranty concerning a matter specifically covered by the written terms of the
lease. Coleman v. Rotana, Inc., 778 S.W.2d 867, 871 (Tex. App.--Dallas 1989, writ denied)
(citing Exxon Corp. v. Atlantic Richfield Co., 678 S.W.2d 944, 947 (Tex. 1984)). 
3. The entire provision reads: 


8.1 Maintenance and Repairs by Lessor Lessor shall repair and/or replace, as needed, the
following items as a building expense under paragraph 32.1, so long as they are building standard
items: light bulbs, ballasts, and fixtures; plumbing; hardware; appliances; doors; and wall and
window coverings. Lessor shall use diligence to provide for the reasonable cleaning, maintenance,
repair, reconnection of interrupted utilities or services, and landscaping of common areas, subject
to any reimbursement obligations of Lessee under paragraph 8.2. . . . 
4. 32.1 Building Operating Expense In addition to the monthly base rent in paragraph 2.1,
Lessee shall pay additional rent on a monthly basis, equivalent to Lessee's prorata share of actual
building operating expenses as per Exhibit C. . . . 


Exhibit C provides: Exhibit C - Building Operating Expense Passthrough Calculations - (c)
DEFINITION OF BUILDING OPERATING EXPENSES. Building operating expenses for each
calendar year shall include: . . . roof repairs, . . . and other maintenance expenses; . . . .
5. 8.2 Maintenance and Repairs by Lessee Lessee shall promptly reimburse Lessor for the
cost of repairing or replacing non-building standard items and the cost of repairing or replacing
damage which is cased inside Lessee's office space by Lessee, Lessee's agents, employees, family,
or licensees, invitees, visitors, or customers or outside Lessee's office space by lessee or Lessee's
employee's [sic], agents or contractors. . . .Lessee shall pay for replacement of all non-building
standard light bulbs and for unstopping any drains or water closets in Lessee's office space. . . .
6. 18.1 Default by Lessor Lessee shall be entitled to recover actual damages and terminate
this lease if (1) Lessor fails to pay any sum due and owing to Lessee within 7 days after written
demand from Lessee, or (2) Lessor remains in default on any other obligation for 7 days after
Lessee's written demand for performance. However